The next case today is Danilo de Paula Vieira v. Dajani Aquino de Souza, appeal number 21-1522. Attorney Beckley, please introduce yourself for the record and proceed with your argument. Good morning. Shamice Beckley on behalf of Appellant Dajani Aquino de Souza. Before I begin, Chief Judge Howard, could I reserve two minutes for rebuttal? Yes. Thank you. The district court made at least two errors warranting reversal. And importantly, these errors with respect to the grave risk exception under the Hague Convention raised the Article 13b bar much higher than the convention requires. So first, the district court erred in concluding that the Hague Convention grave risk exception could not apply in this case because, and here I quote, none of the allegations of domestic abuse were directed at the child. That's Addendum 10. That is not required. That is an error of law. Second, it further erred in concluding that the exception couldn't apply because Ms. de Souza had not proffered evidence that the minor was suffering from trauma. Again, that is not required. That is an error of law. And those errors really, you know, put the bar of grave risk much higher than was required. When the bar is placed at its proper level, the evidence in this case as presented below was sufficient to find that a grave risk of future psychological harm to the child existed. But at a minimum, this court should remand to allow the district court an opportunity to analyze the proper question in the case, which is where there has been a finding that there is domestic violence. What is the risk of future psychological harm to the child if she is returned to the domestic abuser? The district court's approach in this case cut that inquiry short and was inappropriate. Now, on the grave risk exception, I just want to address something that's sort of atmospherically in the decision below and, you know, implied in the opposition here today, which is that the grave risk exception is supposed to be narrowly applied and that the facts that came out in this case are just insufficient to meet the burden. That is incorrect. It is correct that the grave risk exception is supposed to be narrowly applied. That is absolutely correct. And I would even concede that where the issue is really future psychological harm to the child, it's perhaps most rigorous. And that is because there is a presumption of return in the convention and some psychological harm may appear in every case. The typical refrain in the case law is, you know, where the psychological harm is forcibly removing the child from a parent or forcibly relocating them. That is, while real and traumatic, not sufficient to invoke this exception, lest it swallow the rule. However, all jurists… Counsel, let me ask you, before you proceed, one question. Is there any evidence of record that while the minor was in Brazil with the father before being removed to the United States, there were any issues of physical or psychological or any type of harm to that minor? It appears to me, at least from the record, that that is not in question. Am I correct? Well, so there is one incident in the record below where the child was arguably put at risk, where the father was, you know, driving dangerously with the minor in the car, threatening the mother. I think that's what sort of came out below. But to get to your point, the idea that the child had to be specifically targeted or put at risk or traumatized by the abuser is just not required. And, you know, this is because in cases of domestic violence that has been recognized by this court and Walsh, but in many cases, there's just an understanding that there is a risk of psychological harm to a child in cases of domestic violence. Where, you know, this court recognized in Walsh, the social science, the state and federal case law, the congressional resolutions that say, you know, where there is domestic violence, there is a risk. Now, whether or not that risk that exists rises to the level of grave risk of harm sufficient to invoke the Article 13b exception is a separate question. But it's one that can't be answered unless you understand what the proper question is, which is where the district. Counsel, excuse me. I think you're being a little unfair to the district court in the sense that you're only citing a portion of the district court's decision. I mean, the district court, when it's talking about this issue of establishing grave risk to the minor, acknowledges, talks about the credible social science literature that establishes that serial spousal abusers are also likely to be child abusers. Acknowledges that in this kind of, in a domestic violence scenario, the children are at increased risk of physical and psychological injury themselves when they are in contact with a spousal abuser. But then the court goes on to say, but DeSouza fails to meet her burden because there is simply no evidence of such phenomena here. So the district court understood that in situations where the evidence goes only to perhaps instances of some form of abuse between spouses, that can also affect the child too, but says there's simply no evidence that that phenomena occurred here. So it seems to me that's a factual finding. You're trying to convert a factual finding into a legal error. And I don't know how you can do that, given the way the district court explained itself. Respectfully, I think that that reveals a misunderstanding of the law by the district court, because what the district court is saying is it's recognizing that there can be this risk, but it's saying that DeSouza fails to meet her burden because she hasn't shown that there could be the risk, while simultaneously finding that this was a domestic, this was an environment of domestic abuse. And that itself is evidence that the child might be at risk. There is no requirement that the respondent must, you know, produce evidence of current trauma to the child. If the child was a baby and you sent them back and they didn't have an understanding of it, but they might grow to have one, that would be sufficient. That's the Walsh warning that the risk has to be grave. It doesn't have to be eminent. But also, you know, there doesn't have to be evidence of like a clinical report saying, yes, for sure. In this case, there's going to be risk. It's an understanding in the case law that where there is domestic violence, where the district court found there is domestic violence, there is a risk of psychological harm to the child. There is one. That would apply then as a blanket rule for every domestic violence case. There would be an exception to returning the minor under a convention, correct, for domestic violence. No. So I think the recognition is in cases of domestic violence, there is a risk to the child of returning a child to a domestic abuser. Whether that risk that exists rises to the level of grave risk of harm under the convention is a separate question. But there has to start with the premise of recognition that the risk exists merely because of a finding of domestic violence. But isn't that, as Judge Lopez was saying, isn't that exactly what Judge Young did? He did find that there was domestic violence. But then under the particular evidence, he went a step further and as a factual matter determined, in this case, there's not that risk. Respectfully, I don't read his decision to understand that distinction because he repeatedly focuses on the fact that there isn't evidence of targeting the child with the violence or the, excuse me, domestic abuse, verbal abuse threats, and there isn't evidence that the child is traumatized. He respectfully seems stuck on the idea that there has to be some sort of currently existing threat that has happened to the child or abuse that has happened to the child or trauma to the child, and that is just not the case. I think, you know, to distinguish, I just want to address because I think what's animating this a little bit also is this idea of, you know, the standard needs to be high and this is, you know, we don't want to sort of let any allegations through of, you know, domestic violence to be able to invoke the exception. And I just want to focus a little bit on the allegations in this case and the standard. You know, I think, like I said, it's true that this is supposed to be a narrow exception, but I think that the Simcox case out of the Sixth Circuit provides a really helpful framing for cases of domestic violence where there really is this caution, where there's this danger recognized in the scholarship of setting the threshold so high that only the most egregious forms of abuse could ever satisfy it. So in that case, the court lays out there, in cases of domestic violence, where you're trying to figure out, okay, there's a domestic violence, there's a risk of psychological harm if we return the child, how do we analyze that? The court says there's minor cases, there's clearly grave cases, and then there's a large group of cases that are middle of the road, which is where they place the Simcox facts. Despite placing them in the middle of the road case, they overturn the district court's finding that there wasn't a grave risk of harm. And in that case, I would argue that the facts were not necessarily more egregious than ours. But counsel, so here, the district court in its findings of fact and rulings of law, it cited the relevant precedent, noted the recognition in the case law that there's an increased risk of physical and psychological injury to children who are in contact with a spousal abuser, but said there's no evidence of such phenomena here. Why isn't a fair reading of that, that this is the judge, as Judge Lopez said earlier, acknowledging that the risk exists, but I've got no evidence that it's grave? And if that's what the judge is saying, what do you say to that? How do you overcome that finding? Well, if the judge is saying that this is just insufficiently grave, I would argue that that's incorrect as well. The findings below are... So he says that the phenomena of, the way I read it anyway, of psychological or physical injury does not exist in this case. So what does exist that would put it into the category of grave? Well, so he says that the phenomena doesn't seem to exist with respect to the child. The phenomena clearly exists, and he finds that it does. He finds that the domestic abuse was occurring here. He finds that Mr. Vieira was verbally and psychologically abusive. Specifically, he finds that Vieira was threatening to Ms. D'Souza, that the abuse was verbal, and threats, and household violence, and breaking her phone. He notes that the abuse was severe enough that she sought psychological treatment to deal with it, and that she sought and obtained a restraining order in Brazil to protect herself from him. He also notes that the child witnessed the conduct on at least one occasion where the child was arguably put in danger, and notes in a footnote that there were allegations that the minor observed Vieira commit violence against others. But that's not all. The testimony elicited below, though brief at a one-and-a-half-hour evidentiary hearing, you know, Ms. D'Souza testified that he behaved violently on a regular basis and erratically, and that he even forced her to have an abortion, a fact that is terrible and not contested below, and surprisingly not discussed by the court. And this is where I think this framing of the case law is really important, because, you know, the argument is like, this case, the facts aren't that bad. I respectfully disagree. And in the Simcox case, for instance, there was evidence that the father was verbally and physically abusive with his wife and children, so there were allegations of physical abuse. But it was swearing, sort of grabbing the wife's jaw, cussing at them. However, in that case, unlike ours, the district court also found that the credibility of the parents were in question. There was evidence that the mother fled not because of domestic abuse, but because of a romantic relationship. You know, there was no evidence of medical treatment, psychological treatment, no restraining order. Nevertheless, the circuit said in that case, these allegations are sufficient. These are sufficient to show a grave risk of harm. And again, it's because the standard in these domestic violence cases should not be so high that only the clearly grave, you know, the clearly grave cases of sexual assault, of course. But that's not the only protection that the Convention offers. Let me ask you to pause there to see if there are additional questions from the court. All right. You've reserved some time, Ms. Beckley. Thank you. Ms. Hickey. May it please the court. My name is Wendy Hickey, and I represent the petitioner appellee in this matter, Danilo Vieira. Your Honors, this is a very unique case, as the Hague cases generally go. When you have a case where domestic violence is alleged and there's a fleeing with a child on account of domestic violence, typically, the parent fleeing takes the child with them. That is not the case in this situation. In this case, the mother developed a well-orchestrated kidnapping plot and executed it. She chose her own path two years prior to the kidnapping, moving to the United States, leaving the party's then four-year-old child in the sole custody of her father in Brazil. She had options at the time. She could have sought an order from the court in Brazil for custody. She could have sought permission to remove with the child if that's truly what she wanted. She didn't do those things. Instead, two years after moving to Massachusetts, without actually returning to Brazil in the meantime, she orchestrated a plan with her sister, who regularly saw the child, for the sister to take the child to a medical appointment and then back to the maternal family relatives for the weekend. This plan was carried out. My client became suspicious when he was unable to reach the child after the first day. He was then unable to reach the maternal aunt. He received a text that the child had fallen asleep and her phone battery had died, so she was going to be returned a day late. The father became very concerned and went to the family's home, speaking with an uncle and learning that the child had been kidnapped to the United States. He immediately took action with the authorities in Brazil in order to secure the return of his daughter. What is the relevance of all this? Does this somehow go to the grave risk issue? Is that your point? Yes, Your Honor. So the grave risk, it is an elevated test here. The mother had the obligation to prove by clear and convincing evidence that the return of this child to Brazil would create a grave risk of some immediate harm to the child. That just isn't here. There was a two-year gap from the last time this child could have potentially witnessed any sort of domestic violence between her parents, assuming there was domestic violence. There was a two-year gap between the last time she could have witnessed something and the actual taking of the child. In order to prevent a return of the child under the convention, there needs to be some immediate harm that would befall the child upon return to the country of her habitual residence. This is not a situation where we're looking at a final custody determination. This is a situation where we're looking to return the child to her habitual residence where the appropriate forum can adjudicate the final matter. So if we're not going to give the court in Brazil the opportunity to determine this matter themselves, which they're certainly capable of doing, then we've effectively granted the mother custody in this proceeding, which is not what the Hague Convention is looking to do here. Counsel, what about the, and I know the appellate didn't address this, perhaps she will in rebuttal, but this issue of hearing from the child and letting the child express an opinion about where the child would like to be. Now, petitioner was proceeding pro se, a very brief hearing, but in arguing to the judge, she alerted the judge, maybe inartfully, but alerted the judge to the fact that she represents, my daughter would like to stay here with me. And the judge, why shouldn't that have alerted the judge to the need to hear from the child, even though the mother appearing pro se didn't seem to understand that she had to make some evidentiary presentation on that issue, or say to the judge, I'd like you to hear from my daughter. That's really what she was saying. You ought to hear from my daughter. And he doesn't do anything with that. Why isn't that in these circumstances, pro se, everything that's at stake, why isn't that an abuse of discretion to just have ignored that statement from the mother? You should hear from my daughter. Certainly, Your Honor. I don't think Judge Young ignored the request. The Hague Convention does permit the court to entertain information from a child who is deemed to be a mature enough child to have their opinion voiced. It's not an obligation. It's something that, in the judge's discretion, they can permit. Assuming that the mother's request at sort of the very last moment during her closing argument was sufficient to ask that the child be deemed a mature enough child to have a say in this matter, it was within Judge Young's discretion to decide whether or not he felt that a child who was left in Brazil with her father at the age of four and then taken to this country when she was six by the mother, it was up to him to decide whether or not that would have a bearing on the ultimate decision. And even if, Your Honor, the child was evaluated or was somehow brought to the court to give testimony and deemed to be a mature child, the fact that she may have expressed a desire to stay in Massachusetts as opposed to going back to Brazil, that doesn't dictate the outcome of the case. It's something the judge could consider, but it's not binding on the judge, the child's desire in such a situation. Counsel, I realize it's not binding, but if the judge doesn't hear from the child or makes a determination, the judge and the record determine the eight-year-old is not mature. What if the child is mature? Again, the child may be able to offer some information. It may even benefit your client, but that did not occur. So what do you have to say about that? So what I have to say about that, again, is the convention, although it permits it, it doesn't require the court to hear from a child if a parent makes the request. It's in the judge's discretion, and I assume that Judge Young, in his discretion, and he's well-versed in these cases, decided not to put the child through that. We're talking about trauma to the child. What could be more traumatic to a 7-year-old than being walked into the federal court, a place where she doesn't speak the language, and being asked to choose between daddy and mommy? I mean, to me, my background is in family law, and we're talking about trauma to the children. I can't think of something that could be potentially more traumatic to a 7-year-old than that very situation. In terms of the mother acting pro se, I know in the mother's brief, there was discussion about how the judge has an obligation to have deference to a pro se litigant, and in this particular case, I believe Judge Young exercised extreme deference to the mother. Throughout the transcript, and this is only a 45-page transcript, throughout the transcript, on five separate occasions, Judge Young asked the mother if she had anything else she wanted to say. He was willing to entertain anything she wanted to say. He repeatedly asked, anything else? Anything else you wish to say, ma'am? Anything else? Is there anything you wish to say? And every time she wanted to speak, he gave her plenty of opportunity to do so. So on five separate occasions, he attempted to coax additional information out of the mother. The fact that there was complaints that Judge Young didn't make enough findings. Well, on 45 pages of evidence, it seems as though he made more findings than, quite frankly, I expected him to because there was such a lack of information provided to him. Mother's arguments gave very little detail. She didn't speak to a pattern of abuse. She just classified father's conduct as being abusive. These other cases that we're talking about, the Simcox case, for example, that was brought up on my sister's argument, there was physical abuse in that case. Yes, it was deemed one of those middle cases. And there was use of belts. And there was clear physical violence perpetrated against the mother and against the children in that case. And this is very different. This is very different. There were arguments between the parties. The mother testified that there was yelling between the two of them. So this wasn't a one-way street. The other thing that's worth noting is the restraining order that existed in Brazil. Father testified to his understanding as to how things work in Brazil. It resulted from a phone call by a neighbor who heard a yelling exchange. The police came to the house. A restraining order was issued. The mother didn't request the restraining order. The restraining order was issued by the prosecutor's office, which is how it works in Brazil. Three weeks later, the police come to the house. Is everything fine? Mother says everything's fine. We want to revoke the restraining order. They believe at that point the restraining order goes away. On a technicality, later on, dad learned it didn't. And he took the necessary steps to follow through and make sure the paperwork got caught up. That restraining order is no longer in place. It wasn't in place at the time of the taking. It wasn't valid. Your Honors, returning this case to the district court, remanding this to the district court, is going to result in the same result. If there's another trial, we're going to have the same result here. Father respectfully implores this court to affirm Judge Young's decision and return the child to Brazil to her father, her sister, and her extended family who've been anxiously awaiting her return for a year now. Thank you. Thank you. If you would mute your audio and video. Ms. Beckley, you've reserved two minutes. Yes, thank you. So I do want to address the mature child exception really briefly. I don't want to rehash the domestic violence allegations below, but it's not just allegations. The court found that they happened. And the really severe allegations like a forced abortion weren't even contested below. So I just wanted to make that note on the minimizing of those allegations. But on the mature child exception, so the district court did err in just failing to make any factual filings as to the maturity of the child once it apparently recognized the exception had been invoked. By a pro se plaintiff proceeding, you know, through a translator. And so to the extent, it's a little unclear. The judge says, you know, the exception doesn't apply because there's seven and there's no other evidence. So it's a little unclear what they're basing the decision on. But to the extent the decision was based that they could sort of ignore it and just make no factual findings based on the idea that a seven-year-old is per se insufficiently mature under the exception. Excuse me, respectfully. Again, that seems a little unfair to the district court. The district court didn't announce a rule that a seven-year-old can never be mature enough to express an opinion. He just says there's no evidence about the state of her maturity. And there wasn't any. And this is the problem. Your client was proceeding pro se until she had the benefit of your counsel and appeal. And so she didn't understand any of this stuff. And that's unfortunate. That's problematic. But that was the reality of the situation. And how could Judge Young make any findings on this issue in the absence of any evidence at all? Understood, Your Honor. And I just wanted to say to the extent that that was the basis, it would be an error of law. But you're right. He then goes on to say there's no evidence presented. But that statement is at once obvious and a little insufficient because the moment the exception was invoked, an exception that goes to the mom's fundamental rights, but also that exception is the fundamental right of the child. The mature child exception is intended to vindicate the right of the child. And once that exception was invoked, the judge immediately ended the evidentiary hearing, ended immediately after, did not do anything, did not conduct any proceeding in a way that would allow him to make the necessary factual findings about the mature child exception. And this was an evidentiary hearing that lasted just an hour and a half. That is exceptionally short in these cases. I think I haven't surveyed the whole case law, but in the cases that are cited in the parties' briefs, I think the shortest one I saw was five hours. And they're usually days. So the idea that there wasn't necessarily more required here, when the convention, once that exception, once an exception is raised, the court is the fact finder and has to make that analysis. And they can't just sort of... What is the rule that you propose we adopt here that the district court judge hearing an argument, a reference to value, perhaps, occurring from the child, should immediately say, okay, I'm going to reopen the hearing. It would give her legal advice. I'm going to reopen the hearing. You should now get your daughter to come in and testify, and I will hear her. Is that what he should have done? I want to be... I don't want to be prescriptive about exactly the path that the judge could have taken. It is very typical in these cases that the judge does speak with the child and not in a traumatic fashion, if they can avoid it, hopefully, in camera, maybe without the parents, or appoints a GAL or another representative, or could suspend and say, I'm going to suspend and have everybody come back to present additional evidence on this exception. There's a lot of things that could have happened. But with a pro se litigant, where there really is an obligation on the court to proceed in a way that will protect their fundamental rights, and in particular with an exception that invokes the fundamental right of the child, and particularly in a case where there are multiple exceptions, where the child's statement might be very relevant. He says there's not enough to show that there's been trauma to the child. There's not enough to show that there's been maturity. But he ends the proceeding, and in our view, doesn't proceed in a way that would allow him to make, as the fact finder, the necessary fact findings to decide whether the child is sufficiently matured for the exception to be considered. Thank you. Thank you. That concludes argument in this case. Attorney Beckley and Attorney Hickey, you should disconnect from the hearing at this time.